LEIGH M. CLARK, Retired Circuit Judge.
The only issue presented on appeal is whether or not the trial court committed error in denying a motion by defendant for a mistrial. The case was in the process of being tried before a jury on an indictment charging the defendant with attempted theft in the first degree, as to which the jury found defendant guilty, and the court, after due notice and proof of seven previous felony convictions, sentenced defendant to imprisonment for fifty years.
The evidence in the case was undisputed to the effect that defendant came in a motor vehicle to the Winterboro Grocery Company, owned by Marcus Ledbetter, on Highway 21 on September 17, 1982, that defendant was seated behind the wheel of the vehicle and asked the store attendant in the front of the store at the gasoline pump to give him six dollars worth of gas. During the time the motor vehicle was being serviced, defendant entered the store and was seen near the safe of the store. This fact caused Mrs. Ledbetter, who was then in the store, to call Mr. Ledbetter into the store, who asked defendant what he was doing, and defendant “said he was just picking up his change he dropped.” There was approximately $2,000 in the safe at the time, consisting of all denominations of currency up to one hundred dollars. When Mr. Ledbetter went into the store, he, with a pistol in his hand, ordered the defendant to be seated in a chair until the officers arrived. Mr. Ledbetter had set the dial on the safe at 90 when he went out of the store before the defendant had entered it. When he returned to the store on call from inside of the store, the dial on the safe had been changed to another number, but the safe was still locked as it had been left by Mr. Ledbetter. No witness testified on call of the defendant.
The motion for a mistrial was presented during the direct examination of Mrs. Led-better as a witness for the State.
The proceedings that brought forth defendant’s motion for a mistrial were during the direct examination of Mrs. Ledbetter as a witness for the State. We regret that such proceedings are not as clear and coherent as they should be, which is largely attributable perhaps to the lack of precision on the part of some of the persons speaking as to dates and persons that were in the store on the first and second of two previous occasions within several months prior to the date of the crime for which defendant was being tried. The part of the interrogation of the witness that caused strong protest by defendant’s attorney commenced as follows:
“Q. Okay. Now at that time did you recognize this man [apparently referring to defendant] at that time? I’m talking about on September 17, 1982?
“A. I had seen him before.
“Q. And do you recall now when you had seen him before?
*1380 “MR. PURVIS [Defendant’s attorney]: I object.
“THE COURT: Overrule.
“MR. PURVIS: Could I ask for voir dire. I have no idea what it’s going to be.
“Q. Outside the presence?
“MR. PURVIS: Yes, sir.
“THE COURT: I am going to ask you [the jury] to go back in the jury room for just a minute. We need to take up a legal matter. We’ll call you back in a few minutes.
“(Jury goes out of the courtroom).”
Thereupon, a two-page hearing was conducted with the witness still on the stand and she was asked by defendant’s attorney where she had “seen this man before.” The following then occurred:
“A. We had been robbed before, and he was in on at least one of the other robberies.
“Q. I think that is very highly prejudicial.
“THE COURT: What was the answer?
“COURT REPORTER: We had been robbed before.
“MR. RUMSEY [District Attorney]: Judge, I would make a showing to the Court that, I believe, on July 3, 1982, that this man, along with two other men came down to the store, and one man asked for some cheese to be cut, and that this man went back over to the same area, and that ultimately some $1,200 was missing from the safe, not being a robbery, but being a theft with the same mode of operation; and we think it’s admissible on the basis of showing plan, intent, motive and design. And further that it was only — some sixty to ninety days before this happened. We are talking about the same safe, and further there will be further testimony tied up that the safe on this occasion — that he left the safe on a certain number, and when Marcus [Mr. Ledbetter] got into the store, it was not on that number.
“THE COURT: And this witness was there when this alleged theft took place?
“MR. RUMSEY: She cut the cheese before, and that’s the reason when asked to cut the cheese the third time, she took off back to the safe.
“THE COURT: I think it’s going to come in on the plan, motive, and intent.
“MR. PURVIS: Well, I think it’s highly prejudicial, Your Honor. It’s testimony of another offense he was never charged with. There is no connection with it whatsoever. It’s highly prejudicial if it please the Court.
“THE COURT: If the D.A. wants to go forward with it, I’m going to let it in.
[[Image here]]
“MR. PURVIS: You’re overruling my objection?
“THE COURT: Yes, sir. If that question is asked, I’m going to let it in. All right. Let the jury back in please.”
During the next two pages of this transcript the direct examination of the witness proceeded in the presence of the jury until the following occurred:
“Q. The Defendant now back on July 19, 1982 — was he with the man you cut the cheese for the four times?
“A. Now on this occasion I didn’t see him, but that was the second time that week they had been in.
“MR. PURVIS: I object may it please the Court and ask that this be all ruled out and ask for a mistrial at this time.
“Q. Your Honor, could we have the jury go out for a few minutes?
“THE COURT: I’ll have to ask that you back out for a few minutes. Do not discuss the case among yourselves nor allow anyone to discuss it in your hearing and presence.”
There promptly followed another hearing out of the presence and hearing of the jury, in which the following occurred:
“Q. Now, Mrs. Ledbetter—
“MR. PURVIS: Judge, we have asked for a mistrial.
“Q. Judge, I think you can take it under advisement. I think I’ll have a right to try to clear this up outside the presence of the jury.
“THE COURT: I’ll rule on it when the time’s proper.

*1381
“DIRECT OF MRS. LEDBETTER CONTINUES:

“Q. Mrs. Ledbetter, did y’all have a theft down there on July 3, 1982?
“A. Yes, sir.
“Q. Did you see the Defendant seated over there on July 3, 1982?
“A. No, sir.
“MR. PURVIS: That’s what was all gone into, and I object and ask for a mistrial. It’s all in before the jury.
“Q. Judge, I think it would be harmless error because I know Marcus Ledbetter saw him on July 3rd. Mrs. Ledbetter, what I’m asking — I know the man that got the cheese — you testified July 3 and September 17 — that they were different people.
“A. Yes, sir.
“Q. And I know that the same people that came in July 3 — at least all of them were not the same people that came in September 17th?
“A. That’s right.
“Q. But did this man come in on July 3rd, talking about the $1200 roughly or whatever, was taken out of the safe?
“A. There was two came in, but I never talked to but the one I cut the cheese for.”
As the hearing out of the presence of the jury continued, State’s counsel continued to press the position that defendant was present on the occasion of the theft of the money from the safe in the store on July 3, 1982, which he said he could show by Mr. Ledbetter, and to urge that testimony thereof would be admissible to show “a plan and type of design of how the case or how the crime was committed,” and defendant’s attorney continued to press his motion for a mistrial.
Upon a return of the jury to the courtroom, the following occurred:
“THE COURT: Okay, ladies and gentlemen, I want to inform you of a situation that has arisen. There was some testimony that was presented earlier before you went out. In substance there was testimony from this witness stand by this witness saying that the Defendant was at her place of business at Winterboro about a week before July 4, 1982, on Saturday. There was some other testimony following that. Now I’ve got a question that I want to ask you at this time. The Court feels like that this evidence should be excluded and should not be allowed to be considered by you. I have to ask you a question. I’ll call on you at that point in time, and I want you to say ‘yes’ you can put it out of your mind, or ‘no’ you can’t put it out of your mind. The question is this — can you put this statement which I just referred to out of your mind and exclude it from your consideration in this case and render a verdict which is impartial based on the law and evidence in this case. I will start with the gentleman in the back. Can you do that? (ALL JURORS ANSWERED IN THE AFFIRMATIVE).
“THE COURT: Let the record show that there were twelve affirmative ‘yes’s.” We will proceed with the evidence.”
No further reference was made to the question of the presence of defendant on the occasion of the theft from the safe in the store on or about July 3, 1982.
We conclude from our study of the court reporter’s transcript of the proceeding that the trial judge was disposed to allow evidence to the effect that defendant had participated in a theft or an attempted theft from the same safe in the same store on one or more occasions prior to the time of the alleged crime in the instant case, but that the questions, or the answers of the witness, had become so confusing that he decided it would be better and more in the interest of justice to exclude all of such evidence. We are of the opinion also that, had the matter not been so muddled, the State would have been entitled to show that defendant had been in the store previously on one or more occasions in the then recent past under circumstances that strongly indicated that he was a participant in the theft or the attempted theft of money from the safe. Faced with the dilemma produced by the confusion, we can appreciate the choice made by the trial court of *1382 excluding from the consideration of the jury all testimony on the subject, but in its doing so the defendant, we think, was given the benefit of more than that to which he was entitled. By the exclusion of the evidence from the consideration of the jury, defendant was relieved of strong testimony against him that constituted an exception to the general exclusionary rule as to evidence of the commission of a crime not charged in the indictment, as discussed in Gamble, McElroy’s Alabama Evidence, § 69.01(6) (1977), as follows:
“Evidence of the accused’s commission of another crime is admissible if such evidence, considered with other evidence in the case, warrants a finding that both the now-charged crime and such other crime were committed in keeping with or pursuant to a single plan, design, scheme, or system. This rule is applicable whether such plan, design, scheme or system is narrow and specific in scope or is measurably broad and general in scope.”
In our opinion, the court did not commit prejudicial error, and defendant suffered no injustice, by the denial of defendant’s motion for a mistrial. Comparable circumstances are to be found in Chillous v: State, Ala.Cr.App. 405 So.2d 58 (1981), in which it is stated at 405 So.2d 61, per Judge Harris, then Presiding Judge:
“... Substantial error is not presumed. It is the burden of the appellant to show error, and, before a reversal of the judgment is to be had, it must appear to the Court that the error complained of has probably injuriously affected the substantial rights of the appellant. Kabase v. State, 244 Ala. 182, 12 So.2d 766 (1943).
“The granting of a mistrial is addressed to the broad discretion of the trial judge and his ruling will not be revised on appeal unless it clearly appears that such discretion has been abused. Woods v. State, 367 So.2d 982 (Ala.1978). Where error is eradicable a mistrial is too drastic and is properly denied. Van Antwerp v. State, Ala.Cr.App., 358 So.2d 782, cert. denied, 358 So.2d 791 (Ala.1978).”
The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.